**NORTH STAR ICE EQUIPMENT COMPANY, a corporation, Plaintiff,**

v.

**AKSHUN MANUFACTURING COMPANY, a corporation, and Kent Industries, Inc., a corporation, Defendants.**

Civ. A. No. 57 C 1223

United States District Court

N. D. Illinois, E. D.
March 31, 1961.

Edward Warden, Edgar Vanneman, Jr., Chicago, Ill., for plaintiff.

Murphy, Pearson & O'Connor, Chicago, Ill., for defendant.

MINER, District Judge.

This matter having been fully tried before the Court, and the Court having read the pleadings filed herein by the respective parties, and the Court having heard and examined all the testimony, documents and exhibits presented by the respective parties and admitted into evidence, and the Court having read, heard and considered the briefs, memoranda and oral arguments submitted by counsel in support of their respective positions, and the Court being fully advised, the Court hereby enters its Findings of Fact and Conclusions of Law as follows:

Findings of Fact.

I. *The Parties, The Pleadings, and Preliminary Matters.*

1. North Star Ice Equipment Company is a Washington corporation with its principal place of business in Seattle, Washington, and is engaged in the manufacture and sale of North Star Ice Makers for the production of ice in flake form.

2. Defendant, Akshun Manufacturing Company, is an Illinois corporation with an office in Chicago, Illinois, and is a patent holding company. Co-defendant, Kent Industries, Inc., is an Illinois corporation now involved in a proceeding in

this Court under Chapter 11 of the Federal Bankruptcy Law, 11 U.S.C.A. § 701 et seq., and is a licensee of Akshun Manufacturing Company under its patents here in suit.

3. This suit was instituted by North Star for a declaratory judgment that Akshun's patent 2,659,212 is invalid and not infringed by North Star's ice removal tool, method of removing ice and ice machine combination, and that Akshun's patent 2,683,357 is invalid and not infringed by North Star's ice machine overflow trough. Plaintiff further seeks to restrain defendants from suing, threatening to sue, or sending threats of suits or notices to plaintiff and customers or prospective customers of plaintiff charging infringement of the said patents. Finally, plaintiff requests damages allegedly sustained by reason of the said threats of suit.

4. Defendant Kent filed a counterclaim seeking to restrain plaintiff North Star from threatening purchasers and prospective purchasers of this defendants' machines with suit for infringement of plaintiff's patent 2,735,275, and for damages. On the first day of trial, the court granted this defendant leave to amend its prayer for injunction to refer to the specific number of this patent.

5. Akshun Manufacturing Company on February 14, 1957, filed suit in the Northern District of Wisconsin against Tillman Produce Company, Civil Action 2918, charging infringement of patents 2,659,212 and 2,683,357 by Tillman's use of an ice making machine manufactured by North Star Ice Equipment Company.

6. A bona fide controversy exists between the parties.

II. *Lees Patent 2,659,212 In Suit*

A. The Scope and Limitations of the Patent

7. On September 8, 1950, application for patent 2,659,212, naming Gerald M. Lees as inventor, was filed in the Patent Office. The application disclosed and claimed a particular knife for removing a thin sheet of ice in flakes from the freezing surface on the inside of an up-

right drum-type ice making machine. The knives are carried on an arm revolving slowly around the freezing surface. Each knife has a horizontal leading portion with an edge adapted to score and form a groove in the ice. A plurality of knives, one above the other, are present to score the ice into a plurality of parallel spaced grooves. Each knife also has a trailing portion riding in the groove previously formed by the leading portion. The trailing portion is tilted downwardly at an angle to the direction of movement to force the scored ice downwardly, breaking the bond between the ice and the freezing surface and thus completing the ice removal process.

8. The file wrapper of the Lees patent shows that the application filed in the Patent Office on September 8, 1950, contained eleven claims. Claims 1, 2 and 3 claimed ice removal knives, describing the leading portion with its scoring or groove-forming function and the trailing portion with its angle to direction of movement to force the ice downward. Claims 4 and 5 of the original application were directed to the method of removing ice from a surface to which it is frozen by initially scoring the ice followed by the forcing of the ice downward by pressure applied to the ice along the score lines or grooves. Claims 6, 7 and 8 were directed to combinations of elements constituting flake ice making machines, including ice removal blades. Claims 9, 10 and 11 claimed mechanisms for scoring and flexing ice.

On July 19, 1951, as shown by the file wrapper, Lees added a new claim 13 to his application for patent 2,659,212. Claim 13 was broader than the original claims in that it omitted the leading part of the blade and its scoring or groove-forming function. Claim 13 claimed only the trailing part of the knife which is at an angle to the direction of movement of the knives, and would, had it been allowed, read on wedge-type one-part ice removal tools.

9. On December 17, 1951, the Patent Office rejected all then pending claims as unpatentable over prior art patent, Tay-

lor 2,063,770. The applicant thereafter replaced all prior claims with eight replacement claims (14 and 15 claimed the two-part knife; 16 and 17 claimed the two-part method of removing ice; 18 through 21 claimed the machine for making ice and its removal by use of the claimed knife). The applicant also stressed to the Patent Office that the gist of the claimed invention was a knife having two distinct parts and functions, in which the leading part scores the ice to form a groove after which the trailing part rides in the groove and forces the ice downwardly.

10. On February 11, 1953, new claims 14, 15, 16 and 17 were rejected as unpatentable over the Taylor patent disclosure, and combination claims 18, 19, 20 and 21 were allowed. The combination claims describe the machines for making flake ice in general terms, but describe the blades which are part of the respective combinations with particularity, stating again their two-part description and function.

11. On May 13, 1953, claims 14 and 15 were amended to define the "substantially straight scoring edge" as "of substantial extent," and to describe the tilted shearing edge as "positioned at its forward part to ride in the groove" left by the scoring edge. At that time, too, method claims 16 and 17 were amended to limit their scoring function to forming grooves "throughout the extent of the freezing surface." The patent issued on November 17, 1953, with claims 14 through 21, as amended, becoming claims 1 through 8 of the patent. All claims in the patent have as a limitation a knife having the two physically distinct parts serving their separate functions.

B. The Infringement Issue

12. The North Star ice removing tools exemplified by plaintiff's exhibit 21 do have the leading portion element of the knives called for in each claim of patent 2,659,212. The North Star ice maker ice removal knives infringe claims 1 and 2 of the Lees patent in suit; the method by which the North Star knives operate infringe method claims 3 and 4 of the said patent in suit; and the North Star ice machines which incorporate the said infringing tools infringe combination claims 5, 6, 7 and 8 of the said patent in suit.

13. The blades used in North Star ice makers were constructed in a deliberate attempt to appropriate the improvements developed by Lees during the period when Lees was engaged by contract to build a working ice machine for North Star's predecessor, the Lyle Branchflower Company. That contractual arrangement did not contemplate the alienation by Lees of any improvements developed by him for any but the single ice machine which he was engaged to construct for use by Branchflower.

14. The evidence clearly shows that Branchflower intended to produce and sell ice machines in quantity at the time Lees was engaged to construct a machine. It was not until after the machine was constructed that Branchflower disclosed its intention to manufacture and market the machine as its own creation. Upon termination of Lees' said engagement, the Branchflower organization launched its ice making machine business.

15. The North Star blades were constructed in an attempt to depart as far from the physical features of the Lees blade as would be consistent with retaining the two-part function and method of the Lees blade. To the extent that the physical features of the North Star blade differ from the physical features of the Lees blade, any such differences are immaterial. The North Star blades perform the same function in the same way to accomplish the same result as the patented blades. The North Star blades, being the equivalent of the patented blades, infringe claims 1 and 2 of patent 2,659,-212; and the North Star ice machines which incorporate the said equivalent infringing blades, being themselves the equivalent of the patented combinations, infringe claims 5, 6, 7 and 8 of patent 2,659,212.

C. The Validity Issue

16. Lessard and Lees patent 2,585,020 (the same Gerald M. Lees aforesaid), prior art cited by plaintiff against the Lees patent in suit, was issued February 12, 1952, on an application filed July 26, 1948. The patent, in fifteen combination claims, describes an upright drum type of ice making machine with a plurality of revolving knives for removing the ice in flakes from the outside circumference of the drum. The knives are more particularly described as: "knife-edged wedges [which] crack the sheet of ice * * *, the knife edges of said wedges lying tangent to the drum surface and parallel one to another in planes defining right sections of the drum" (claim 1); "wedging knives" (claims 4, 5); "wedging knives [having] their wedge faces each sloped in a corresponding direction from the horizontal" (claim 6); "the knife being so formed and disposed that both wedging faces slope downwardly from [the] functioning edge" (claims 7, 8); "wedging means" (claims 10, 11). The Lessard and Lees patent was referred to of record by the examiner in the prosecution of the application which resulted in patent 2,659,212, but was not applied to disallow any claim therein sought. The Lessard and Lees patent disclosure does not anticipate or render invalid any of the claims of the Lees patent in suit. No claim in Lessard and Lees refers to or is equivalent with a two-part knife or a two-part method of removing ice.

17. Holden patent Reissue 13,000, prior art cited by plaintiff against the Lees patent in suit, was issued July 27, 1909, on an application filed March 25, 1909. This Holden patent was not cited by the Patent Office as a reference in the prosecution of the application which resulted in patent 2,659,212. It was introduced into evidence in this case without any expert or other testimony analyzing it or comparing it with the Lees patent in suit. Claims 17, 18, 21 and 22 of the said Holden patent read as follows:

"17. In an ice machine, the combination of a vertical freezing cylinder, a vertical rotating shaft in the cylinder, and a series of cutters suspended from the shaft to different levels within the cylinder.

"18. In an ice machine, the combination of a vertical freezing cylinder, a vertical rotating shaft in the cylinder, and a series of cutters suspended from the shaft in successive steps of elevation.

"21. In an ice machine, the combination of a vertical tank, a rotating shaft in the tank, a series of lever-arms pivoted to the shaft, a series of depending bars or arms pivoted to the lever-arms, each depending bar or arm carrying a series of cutters, the cutters of the several series being arranged in successive steps of elevation.

"22. In an ice machine, the combination of a vertical tank, a rotating shaft in the tank, a series of lever-arms pivoted to the shaft, a depending bar or arm pivoted to each lever-arm, the depending bars or arms being of different lengths, and cutters at intervals carried by the depending bars or arms."

Except for the specification of the claimed two-part ice removal knives in combination claims 5 through 8 of the Lees patent in suit, one or more of the above claims 17, 18, 21 and 22 of the Holden patent Reissue 13,000 would anticipate and render invalid the said combination claims of the Lees patent in suit. Because of the specification of the two-part ice removal knives in combination claims 5 through 8 of the Lees patent in suit, none of the said claims 17, 18, 21 and 22 of the Holden patent anticipate or render invalid the said combination claims of the Lees patent in suit.

18. No claims of the Lees patent 2,659,212 in suit are anticipated or rendered invalid by the disclosures in Taylor patent 2,063,770, and Raver patent 2,308,541, less pertinent prior art cited by plaintiff against the said Lees patent.

III. *Albright Patent 2,683,357 In Suit*

19. Albright patent 2,683,357, filed October 26, 1951, issued July 13, 1954. The application disclosed an upright

drum type of ice making machine and the patent, in claims 1, 2 and 3, claims a trough structure for catching an excess of water poured over the refrigerated drum surface to make ice. The particular structure claimed is a trough placed below the lower edge of the drum surface, and mounted on a rotor that carries the revolving ice removing knives. Another circular trough below the revolving trough is positioned to receive the water through a drain in the bottom of the revolving trough. Each of the 5 claims of Albright patent 2,683,357 requires a structure in which the revolving trough below the lower edge of the drum is present. Claims 4 and 5 define the trough as part of certain flake ice making machines.

20. North Star ice makers have not and do not contain a revolving trough of any kind. There is no infringement of any claim of Albright patent 2,683,357.

21. Prior art Lessard and Lees patent 2,585,021 was filed November 27, 1948 and issued February 12, 1952. The patent describes an upright drum type of ice making machine in which water in excess flows over the freezing surface of the drum and is caught in a revolving trough 30 which empties into a circular basin 31. The arrangement, structure and operation of the trough mechanism shown in prior patent 2,585,021 is substantially the same as claimed in claims 1, 2 and 3 and described in combination claims 4 and 5 of the later Albright patent 2,683,357 in suit. The disclosures of the earlier patent 2,585,021 anticipate and render patent 2,683,357 in suit invalid.

IV. *Branchflower Patent 2,735,275*

22. The validity of patent 2,735,275 is not before the court because there is no evidence that it is owned by any party to this suit or any party summoned before this court to defend the said patent, and because the pleadings do not place the validity of the patent in issue. The counterclaim of Kent Industries Inc. alleges that patent 2,735,275 is owned by North Star Ice Equipment Co., which allegation is denied. No evidence has been presented to support that allegation.

V. *The Unfair Competition Issues*

23. No evidence was offered concerning the counterclaim of Kent Industries, Inc. for injunction and damages for customer threats alleged to have been made by plaintiff. The counterclaim, being thus unsupported on the record, must be dismissed on its merits.

24. In view of the findings by the court concerning plaintiff's infringement of Lees patent 2,659,212, the court finds that defendants' charges of infringement directed to plaintiff and plaintiff's customers were not unwarranted. There is insufficient evidence to permit a finding that the defendants' charges of infringement and threats of suit went beyond the bounds of propriety.

Conclusions of Law.

1. The court has jurisdiction of the parties to and the subject matter of this suit.

■ 2. Claims 1 through 8, inclusive, of patent 2,659,212, in suit, are valid.

3. Claims 1 through 8, inclusive, of patent 2,659,212, in suit, have been infringed by plaintiff.

■ 4. Claims 1 through 5, inclusive, of patent 2,683,357, in suit, are invalid for lack of invention in view of the prior art.

5. Claims 1 through 5, inclusive, of patent 2,683,357, in suit, if valid, have not been infringed by plaintiff.

6. The court has no jurisdiction over Lyle Branchflower or patent 2,735,275.

7. Plaintiff's claim for damages by reason of threats of suit by defendants must be denied and dismissed on its merits.

8. The counterclaim of defendant Kent Industries, Inc., for an injunction and damages by reason of threats of suit by plaintiff must be denied and dismissed on its merits.

9. Defendants are entitled to permanent injunction restraining plaintiff from infringement of patent 2,659,212.

10. Defendants are entitled to a judgment for damages from plaintiff for infringement of patent 2,659,212.

11. Plaintiff, having deliberately and fraudulently appropriated the improvements later disclosed by the inventor in patent 2,659,212, and having thereafter sought herein to invoke the equitable powers of this court on its behalf to restrain defendants from asserting rights in the said patent and in patent 2,683,357, has come into court with unclean hands. As to the equitable relief sought, the doctrine of unclean hands must be and hereby is invoked. Accordingly, all equitable relief should be denied.